## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**vs.**                                                                 **1:05-CV-138-SPM**

**JOHN G. BAHRS, individually, and as
missionary for THE SPRING OF LIVING
WATER MISSION, and as trustee for IN
GOD WE TRUST FAMILY TRUST;
DEBORAH Z. BAHRS, individually, and
as trustee for IN GOD WE TRUST FAMILY
TRUST; IN GOD WE TRUST FAMILY
TRUST; THE SPRING OF LIVING WATER
MISSION; and ALACHUA COUNTY TAX
COLLECTOR,**

      **Defendants.**
_____/

### ORDER GRANTING SUMMARY JUDGMENT FOR PLAINTIFF

**THIS CAUSE** comes before the Court upon the "United States of

America's Motion for Summary Judgment With Incorporated Memorandum" (doc.

55) filed July 3, 2006; the affidavits filed in response by the Bahrs (doc. 80) on

July 21, 2006; and the statements of fact filed by both parties (docs. 56 and 81).

For the reasons set forth below, the Court finds that Plaintiff is entitled to

summary judgment.

**SUMMARY JUDGMENT STANDARD:**

Federal Rule of Civil Procedure 56(c) provides for entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden the court must view the evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

The moving party may meet the burden by showing that the non-moving party lacks evidence to support an essential element of the non-moving party's case.  See Riley v. Newton, 94 F.3d 632, 638-39 (11th Cir. 1996).  Once the burden is met, summary judgment cannot be avoided by the non-moving party by simply relying upon the allegations or denials in the pleadings.  See Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990).  Rather, to avoid summary judgment, the non-moving party must point to evidence in the record or additional evidence that could be "sufficient to withstand a directed verdict motion at trial." Id. (citations omitted).  The basic inquiry by the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).

## ANALYSIS:

This is a suit brought by the United States to collect unpaid income taxes for the tax years 1995 and 1996 from the Bahrs, who had filed returns for those years showing no tax liability.  They accomplished this by creating two trusts–American Professional Services Enterprises Business Trust ("Business Trust") and In God We Trust Family Trust ("Family Trust").  The Bahrs assigned all of their income to the Business Trust, deducted business expenses, and then paid the remainder of the money to the Family Trust, which deducted personal expenses before paying the remaining income to the Bahrs.  The remaining income just happened to be the exact amount of personal exemptions and standard deductions claimed, thus resulting in tax returns showing that no taxes were owed for those years.

The IRS examined the Bahrs's returns in 1998 and determined that they owed $99,458.18 for 1995 taxes and $62,097.79 for 1996 taxes.  During this examination period, John Bahrs created an entity called Spring of Living Water Mission ("Mission") and transferred all assets from the Family Trust to this Mission, with no consideration given or received.  Because the Bahrs refused or neglected to pay their 1995 and 1996 income taxes, a lien has arisen on all property and rights to property owned by them, including a parcel of undeveloped land which the Government seeks to foreclose (the "subject property").  The total assessed amount, including penalties and other statutory allowances to date, is $161,555.97.  This is the amount the Government seeks to recover from the Bahrs.

In response, the Bahrs have raised a number of meritless defenses. As to their statute of limitations argument, while 26 U.S.C. § 6501(a) does require that assessments must be made within 3 years of the date of filing the return, § 6501(c) waives that limitation period in the case of filing a fraudulent return or attempting to evade taxes.[1]  Further, the three-year period in § 6501(a) is suspended for 90 days[2] after a notice of deficiency is mailed, and no assessment can be "made, begun, or prosecuted" until that time has passed. 26 U.S.C. § 6213(a).  26 U.S.C. § 6503 adds an additional 60 days to the suspension period, resulting in a 150-day delay before the assessment in this case could properly begin.  Three years and 150 days from the 1995 filing date of April 15, 1996[3] is September 12, 1999.[4]

The Bahrs next argue that § 6201 and 27 C.F.R. part 70 authorize the assessment of taxes only on sales of firearms, alcohol and tobacco.  This argument stems from a misunderstanding of the purpose of the "Parallel Table of

---

[1]  (1) False return.--In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.
        (2) Willful attempt to evade tax.--In case of a willful attempt in any manner to defeat or evade tax imposed by this title (other than tax imposed by subtitle A or B), the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

26 U.S.C. § 6501(b)(1)-(2).

[2]  150 days outside the United States.

[3]  A return is considered filed on the date it was due, even if it was actually filed earlier.  26 U.S.C. § 6501(b).

[4]  It appears that the Government's reference to 120 days is a typographical or mathematical error; the additional 60 days, when added to the original 90 days, results in a tolling period of 150 days, not 120.  Even using the Government's 120-day figure, however, the assessment was timely.

Authorities and Rules," found in the Code of Federal Regulations (CFR).  This

table simply provides citations to rulemaking authority for regulations codified in

the CFR.  Title 27, part 70 of the CFR deals with various aspects of firearms,

tobacco and alcohol, including their taxation.  The Parallel Table simply notifies

the reader that the tax regulations in CFR are authorized by 26 U.S.C. § 6201.

The plain language of § 6201 provides that the Secretary of the Treasury is

"authorized and required to make . . . assessments of *all taxes* . . . imposed by

this title" (emphasis added), and the Bahrs are required to pay those taxes.

        The main argument made by the Bahrs is that the subject property is not

subject to foreclosure because it is held not by them, but by the Mission, thus

shielding it from any tax liens or foreclosures.

        A lien for unpaid tax attaches to all property belonging to a taxpayer during

the life of the lien.  This includes property held by a nominee or alter ego.

Shades Ridge Holding Co., Inc. v. United States, 888 F.2d 725, 728 (11th Cir.

1989)(*citing* G.M. Leasing Corp. v. United States, 429 U.S. 338, 350-51 (1977)).

In deciding whether an entity is a nominee or alter ego of an individual, the court

must focus on who has "active" or "substantial" control.  Id. at 728-29 (*citing*

Valley Finance, Inc. v. United States, 629 F.2d 162, 172 (D.C. Cir. 1980)).

Shades Ridge lists three factors to be examined:  (1) the control exercised by the

taxpayer over the nominee and its assets; (2) the use of corporate funds to pay

the taxpayer's personal expenses; and (3) the family relationship, if any, between

the taxpayer and the corporate officers.  Id. at 729 (*citing* Valley Finance, Inc.,

629 F.2d at 171-72; Loving Saviour Church v. United States, 728 F.2d 1085, 1086 (8th Cir.1984)).

In this case, there is an abundance of evidence to suggest that the trusts and the mission were nothing more than shells set up to avoid both payment and collection of income taxes.  The Business Trust, created on January 5, 1994, listed John Bahrs as the creator and Deborah Bahrs as the sole trustee.  The Family Trust, created the same day, reverses their roles: Deborah Bahrs is the creator, and John Bahrs is the only trustee.  Income the Bahrs received from their professions (chiropractor and cosmetologist) was deposited directly into the Business Trust; in fact, the Bahrs instructed their patients and clients to make their checks payable to American Business Services Enterprises.  The Business Trust was the sole source of distributions into the Family Trust, which in turn paid the mortgage and property tax on the subject property, as well as the Bahrs' personal expenses, including their children's education.  Any money received by the Family Trust came strictly from the Business Trust and no other source.

The subject property held in the Family Trust was quit-claimed to the Mission on June 11, 1998, ostensibly as a "religious contribution".  John Bahrs testified at deposition that he felt a calling to become a missionary and wanted to be associated with a "religious entity," so he decided, after conversations with representatives of the Church of Yahweh, that he would create the Mission to carry out charitable works.  Notably, Bahrs does not know where the Church of Yahweh is located or what it does, he is the sole missionary of the organization,

and the Mission's "congregation" consists of his three children, who assist him in caregiving for the elderly.

The Mission received money from yet another trust created by the Bahrs, the Health Alternatives Trust ("Health Trust").  This money was used by the Mission to pay expenses such as the mortgage on the quitclaimed property; family groceries; utility bills for the Bahrs' personal residence, including garbage, sewer, and electricity; John Bahrs' cell phone; dentist bills; and numerous personal credit and charge card accounts, including Diner's Club, Sears, JC Penney, and Exxon.  Not one account paid from the Mission's income bore the name of the Mission as an organized entity.

John Bahrs also recorded a lien against the Mission's subject property for $150,000 on November 11, 1998.  In his words, the purpose of the lien was to "protect any improvements that [he] put on there or any expenses that [he] incurred."  The improvements apparently consisted of the beginnings of a fence and some cleaning and landscaping.  In his answers to the Government's interrogatories, John Bahrs' other reason for encumbering the property was to "secure obligation or likelihood of obligation of mission to John Bahrs–missionary."  Neither justification is rational.  The lien served no purpose except to frustrate the Government in its attempt to collect taxes from the Bahrs.

The trusts and the mission were created as part of the Bahrs' scheme to avoid paying income taxes.  Applying the factors listed in Shades Ridge to these facts, it becomes clear that these entities are merely nominees or alter egos of

John Deborah Bahrs and should be disregarded.  Piercing these sham entities enables the Government to recover the taxes owed by the Bahrs for 1995 and 1996.

CONCLUSION:

The Bahrs have not overcome the presumption of correctness to which a tax assessment is entitled.  Bone v. Comm'r, 324 F.3d 1289, 1293 (11th Cir. 2003); Olster v. Comm'r, 751 F.2d 1168, 1174 (11th Cir. 1985).  Additionally, they have come forward with no evidence demonstrating the existence of a genuine issue of material fact.  From the record presented, it appears that the Bahrs created these alter egos specifically to avoid personal tax liability.  As noted *supra* in this order, the amount of personal income paid out from the trust to the Bahrs was coincidentally the exact amount of the deductions and exemptions shown on their 1995 and 1996 tax returns.  The trusts and the mission had no legitimate purpose, and the Bahrs will not be permitted to use them as a shield against paying the income taxes they owe to the Government.

Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1.     Plaintiff's motion for summary judgment (doc. 55) is hereby *granted*.

2.     The clerk shall enter summary judgment in favor of Plaintiffs in the amount of **$167,675.81** for tax year 1995 and **$105,617.82** for tax year 1996, as of February 20, 2006, plus interest and statutory

additions accruing to the date of payment.

3.      The American Professional Services Enterprises Business Trust,

the In God We Trust Family Trust, and the Spring of Living Water

Mission are declared mere alter egos or nominees of the Bahrs.

4.      The fraudulent conveyance of the subject property to Spring of

Living Water Mission is set aside as null and void.

5.      The Court hereby orders foreclosure of the subject property.

6.      The Government is ordered to submit a motion and proposed order

of foreclosure on or before *October 2, 2006*.

7.      All pending motions are dismissed as moot.

**DONE AND ORDERED** this <u>twenty-ninth</u> day of August, 2006.

_s/ Stephan P. Mickle_

Stephan P. Mickle
United States District Judge